UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHG-MERIDIAN USA CORP.,

        Plaintiff/Counter-Defendant,

v.

MARCUS THEATRES CORPORATION,

        Defendant/ Counterclaimant.

Case No. 2:24-cv-00026-JPS

---

**MARCUS THEATRES CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

---

Defendant/Counterclaimant Marcus Theatres Corporation ("Marcus"), by its attorneys, Godfrey & Kahn, S.C., hereby answers and responds to Plaintiff/Counter-Defendant CHG-Meridian USA Corp.'s ("CHG") amended complaint as follows:

Except as otherwise admitted or qualified in this Answer and Affirmative Defenses, Marcus denies each and every allegation of CHG's amended complaint.

## PARTIES

1. CHG at all times herein mentioned was and is a corporation organized and existing under the laws of the State of California with its principal place of business in Woodland Hills, California. CHG is duly authorized to do business in all 50 states, including in Milwaukee, Wisconsin.

**Answer**: Marcus admits CHG is a California corporation, but Marcus lacks sufficient information to either admit or deny the remaining allegations of paragraph 1 and therefore denies the same.

2. Marcus Theatres Corporation ("Marcus") is a business corporation incorporated in Wisconsin since 1972. Marcus has had a principal place of business at 100 East Wisconsin Avenue, Suite 1900, Milwaukee, WI 53202, and, at all times material, has a registered agent, Mr. David Metz, at the same address.

**Answer**: Marcus admits it is a business corporation that has been incorporated in Wisconsin since 1972. Marcus admits it has a principal place of business and registered agent located at 100 East Wisconsin Avenue, Suite 1900, Milwaukee, WI 53202. Marcus denies that its registered agent is David Metz.

## JURISDICTION AND VENUE

3. The Court has diversity jurisdiction because complete diversity of citizenship exists between CHG and Marcus, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**Answer**: Admits.

4. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), and the Court has personal jurisdiction over Marcus pursuant to Wis. Stat. § 801.05(1)(c), (3), and (5).

**Answer**: Marcus admits that venue is proper and that the Court has personal jurisdiction over Marcus.

## BACKGROUND FACTS

5. CHG entered into a Master Equipment Lease ("Lease") with CDF2 Holdings, LLC, a Delaware limited liability company ("CDF2") for certain movie projectors and other equipment (collectively "Equipment").

**Answer**: Admits, subject to the affirmative allegation that Marcus is not a party to the Lease between CHG and CDF2.

6. Thereafter, Marcus and CDF2 entered into a Master License Agreement, dated July 5, 2011, ("License"), pursuant to which Marcus licensed the Equipment for its use as set forth in Schedule A to the License.

**Answer**: Admits. Further, Marcus affirmatively alleges that under the License its obligation was to book certain digital movies upon their availability, and that CDF2 agreed that in return for licensing the Equipment it was to be paid Virtual Print Fees exclusively by the movie studios (referred to as "Distributors" under the License).

7. Schedule A to the License lists all equipment subject to this replevin action. ("Equipment").

**Answer**: Marcus admits Schedule A lists all equipment that is the subject of the License. Marcus denies the remaining allegations in paragraph 7.

8. Under the Lease Acknowledgement Agreement, dated as of July 5, 2011, (which was Exhibit L to the License), by and among CHG (lessor), CDF2 (lessee and licensor), Marcus (licensee), and Societe Generale, New York Branch (lender), (the "Lease Acknowledgment") Marcus acknowledged and agreed, among other things, that the Equipment is owned by CHG and is leased to CDF2 and Marcus's use of the Equipment under the terms and conditions of the Lease is subject and subordinate to the terms and conditions of the Lease and all rights of CHG thereunder.

**Answer**: Marcus admits only that the language of the Lease Acknowledgment speaks for itself. Marcus denies any allegations in paragraph 8 that are inconsistent with the language of the Lease Acknowledgement and the parties' obligations of good faith and fair dealing thereunder.

9. Under the Lease, License, and Lease Acknowledgment, CHG is the owner of and holds title to the Equipment.

**Answer**: Marcus admits CHG was the owner of the Equipment under the License and Lease Acknowledgment, but denies CHG's ongoing ownership rights given the agreement reached between Marcus and CHG upon the License expiration by which Marcus agreed to purchase the Equipment at the agreed upon residual value of $1.9 million. Further, Marcus lacks knowledge of the terms of the Lease, and affirmatively alleges that it is not a party to the Lease between CHG and CDF2. Marcus denies any remaining allegations in paragraph 9.

10. If the Lease is determined to be a lease intended as security, CDF2 granted to CHG a security interest in the Equipment pursuant to the assurances set forth in the Lease Acknowledgement Agreement.

**Answer**: Marcus admits only that the language of the Lease Acknowledgment speaks for itself. Marcus lacks knowledge of the terms of the Lease, and affirmatively alleges that it is not a party to the Lease between CHG and CDF2. Marcus denies any remaining allegations in paragraph 10.

11. CHG perfected its security interest in the Equipment by filing with the Wisconsin Department of Financial Institutions a UCC Financing Statement,

Filing Number 20230210000593-5 (the "UCC Financing Statement"). A true and correct copy of the UCC Financing Statement is attached hereto as **Exhibit A**. On or about January 8, 2024, CHG filed an Amendment to the UCC Financing Statement ("Amendment") which identifies the Equipment with particularity, attached hereto as **Exhibit B**.

**Answer**: Marcus admits that Exhibit A is a UCC Financing Statement and that Exhibit B is an amendment thereto. Marcus denies any remaining allegations in paragraph 11.

12. Should Marcus fail to meet the terms of the Lease, Marcus acknowledged CHG's rights and remedies under the Lease Acknowledgement Agreement.

**Answer**: Marcus admits only that the language of the Lease Acknowledgment speaks for itself. Marcus affirmatively alleges that it is not a party to the Lease between CHG and CDF2 and not subject to its terms. Marcus denies any remaining allegations in paragraph 12.

13. Among other obligations, Marcus acknowledged CHG's ability to exercise its rights to the Equipment as the Equipment Lessor (collectively "Step-in Rights").

**Answer**: Marcus admits only that the language of the Lease Acknowledgment speaks for itself. Marcus denies any remaining allegations in paragraph 13.

14. Further, the License required certain minimum booking commitments by Marcus and deadlines for payments.

**Answer**: Marcus admits the License contains a Booking Commitment, as that term is defined in the License, that is triggered based on the existence of certain conditions, including but not limited to the availability of Eligible Digital Titles for which Virtual Print Fees are paid, but Marcus denies the License required certain minimum booking commitments. Further, Marcus denies owing any payments under the License Agreement or owing any deadlines for payments. Marcus denies any remaining allegations in paragraph 14.

15. The parties agreed that Marcus' failure to pay the minimum booking commitment constitutes an Event of Default under the License. Upon the occurrence and continuance of an Event of Default, the License provides CHG with rights and enables CHG to seek remedies expressly provided therein.

**Answer**: Marcus admits only that the language of the License speaks for itself. Marcus denies failing to pay any minimum booking commitment or otherwise defaulting on the terms of the License and denies all remaining allegations in paragraph 15.

16. Those remedies include CHG's right to repossess the Equipment and right to demand the overdue payment in full.

**Answer**: Marcus admits only that the language of the License speaks for itself. Marcus denies any allegations in paragraph 16 that are inconsistent with the License or the parties' obligations of good faith and fair dealing thereunder.

17. Beginning around March 2020 and continuing thereafter, Marcus failed to make the minimum booking commitment payments on the Equipment due and owing to CHG as required by the Lease, License, and Lease Acknowledgement.

**Answer**: Denies. Marcus affirmatively alleges that its obligation to make booking commitments under the express terms of the License was dependent upon the existence in the first instance of available Eligible Digital Titles for which movie studios were paying Virtual Print Fees. Further, Marcus alleges that with the onset of the global pandemic in March 2020, there was a lack of sufficient Eligible Digital Titles paying Virtual Print Fees and thus no ability to, nor obligation by Marcus to make bookings. Finally, Marcus affirmatively alleges that it is not a party to the Lease between CHG and CDF2 and not subject to its terms. Marcus denies any remaining allegations in paragraph 17.

18. This failure to pay constitutes a material breach of the Lease, License, and Lease Acknowledgement.

**Answer**: Denies. Further, Marcus affirmatively alleges that it is not a party to the Lease between CHG and CDF2 and not subject to its terms.

19. This breach has caused damage to CHG.

**Answer**: Denies.

20. CHG provided Marcus with a written notice of default and right to cure on August 25, 2022 ("Notice").

**Answer**: Marcus admits it received a letter from CHG on August 25, 2022. Marcus affirmatively alleges that in the August 25, 2022 letter, CHG accepted Marcus's prior offer to purchase the Equipment for $1,906,490. Marcus denies any remaining allegations in paragraph 20.

21. To date, Marcus has failed to cure its default.

**Answer**: Denies.

22. Marcus remains in wrongful possession of the Equipment, contrary to CHG's Step-in rights as set forth in the Lease Acknowledgement based upon Marcus' default.

**Answer**: Denies.

23. The License calls for Marcus to pay any and all of CHG's attorneys' fees incurred in litigating this matter.

**Answer**: Marcus denies CHG is owed attorneys' fees.

## COUNT I – BREACH OF CONTRACT

24. CHG incorporates paragraphs 1 through 23 above as if fully set forth herein.

**Answer**: All prior paragraphs of this Answer are incorporated by reference.

25. Pursuant to the express terms of the Lease, License, and Lease Acknowledgement, Marcus is commercially obligated to pay the amounts due and owing under the License.

**Answer**: Denies. Further, Marcus affirmatively alleges that it is not a party to the Lease between CHG and CDF2 and not subject to its terms.

26. Marcus has defaulted on its obligations by failing to remit payment for the minimum booking commitment.

**Answer**: Denies.

27. CHG has abided by all its obligations under the Lease, License, and Lease Acknowledgement.

**Answer**: Denies. Further, Marcus affirmatively alleges that it is not a party to the Lease between CHG and CDF2 and not subject to its terms.

28.     As a result of Marcus' breaches by failing to pay the amount due under the Lease, License, and Lease Acknowledgement when due, CHG has suffered damages of $6,634,343.00, as well as unpaid interest, costs and fees, including attorneys' fees due and owing under the Lease, License, and Lease Acknowledgement.

**Answer**:  Denies. Further, Marcus affirmatively alleges that it is not a party to the Lease between CHG and CDF2 and not subject to its terms.

29.     As of August, 2023, CHG is owed by Marcus not less than $6,634,343.00 in outstanding principal as damages due under the Lease, License, and Lease Acknowledgement, plus all additional accrued and unpaid interest, attorneys' fees and costs due and owing under the Master Lease Agreement, License, and Lease Acknowledgement.

**Answer**:  Denies. Further, Marcus affirmatively alleges that it is not a party to the Lease between CHG and CDF2 and not subject to its terms.

## COUNT II - REPLEVIN

30.     CHG incorporates paragraphs 1 through 29 above as if fully set forth herein.

**Answer**:  All prior paragraphs of this Answer are incorporated by reference.

31.     As a result of Marcus' default under the Lease, License, and Lease Acknowledgement, CHG is entitled to take possession of the Equipment, more particularly the Equipment described in **Exhibit B**.

**Answer**:  Denies. Further, Marcus affirmatively alleges that it is not a party to the Lease between CHG and CDF2 and not subject to its terms.

32.     Marcus is wrongly detaining the Equipment despite CHG's request for its return.

**Answer**:  Denies. Further, Marcus affirmatively alleges that CHG agreed to sell the Equipment to Marcus for the sum of $1,906,490.

33.     The cause of the detention is unknown to CHG at the present time.

**Answer**:  Marcus denies that it is wrongly detaining the Equipment. Marcus lacks knowledge of what is known and unknown to CHG. Marcus denies any remaining allegations in paragraph 33.

34. Upon information and belief, the Equipment has not been taken for a tax, assessment or fine or seized under any execution or attachment against Marcus's property, or if so seized, it is exempt from the seizure.

**Answer**: Marcus admits only the Equipment has not been taken for a tax, assessment or fine or seized under any execution or attachment against Marcus's property.

35. The approximate current value of the Equipment is $2,160,300.00.

**Answer**: Denies.

36. The location of the Equipment is identified in **Exhibit B**.

**Answer**: Marcus admits only that most of the Equipment continues to be in use at the assigned location. Marcus affirmatively alleges that some of the Equipment may have been replaced, or moved for storage or repairs. Marcus denies any remaining allegations in paragraph 36.

## COUNT III – UNJUST ENRICHMENT

37. CHG incorporates paragraphs 1 through 36 above as if fully set forth herein.

**Answer**: All prior paragraphs of this Answer are incorporated by reference.

38. In the alternative, if Marcus has no obligations under the License, Marcus has knowingly received value - the projectors without full payment of the minimum booking commitment - to which Marcus was not entitled.

**Answer**: Denies.

39. Further, such an outcome deprives CHG of its rights rendering it unjust and inequitable for Marcus to retain the benefit.

**Answer**: Denies.

40. Marcus has wrongfully retained possession of the Equipment and is unjustly enriched by doing so.

**Answer**: Denies.

41. Marcus's unjust enrichment has caused monetary damage to CHG in an amount to be determined by the Court, plus attorneys' fees and costs.

**Answer**: Denies.

Marcus denies that CHG is entitled to any relief requested in its WHEREFORE paragraph, including, without limitation, the demands set forth in subparts (A) through (D).

## AFFIRMATIVE DEFENSES

1. CHG has failed to state a claim upon which relief can be granted.

2. CHG's claims are barred by the fact that Marcus has, at all times, complied with the Master License Agreement and the Lease Acknowledgment Agreement.

3. CHG's claims are barred because, by definition, the existence of a Booking Commitment depends on the existence of Eligible Digital Titles for which VPFs are paid to CDF2, and without this, no Booking Commitment arises. The Master License Agreement, by its express terms, allocates that risk to CDF2, and in turn, CHG.

4. CHG's claims are barred in whole or in part under the doctrine of force majeure.

5. CHG's claims are barred in whole or in part because the events of the COVID-19 pandemic frustrated the basic purpose of the Master License Agreement.

6. CHG's claims are barred in whole or in part under the doctrine of impossibility of performance.

7. CHG's claims are barred in whole or in part under the doctrine of commercial impracticability.

8. CHG's claims are barred in whole or in part by California Civ. Code. § 1511.

9. CHG's claims are barred by the fact that Marcus exercised its right to purchase the Equipment pursuant to the Master License Agreement and CHG accepted Marcus's offer to purchase the Equipment.

10. CHG's claims are barred in whole or in part by the doctrines of waiver, estoppel, and/or laches.

11. CHG's claims are barred in whole or in part by the doctrine of unclean hands.

12. CHG's claims are barred in whole or in part by its own material breaches of the Lease, License Agreement, and/or Lease Acknowledgment Agreement.

13. CHG's claims are barred in whole or in part because CHG has sustained no injury or damage as a result of any alleged actions by Marcus.

14. In the alternative, any alleged damages sustained by CHG were caused by its own failure to mitigate damages.

15. CHG's claims are barred in whole or in part by the applicable statute of limitations.

16. Marcus reserves the right to assert additional defenses as warranted by discovery of additional facts.

WHEREFORE, Marcus respectfully requests that the Court enter an order and judgment:

a) Dismissing the Amended Complaint with prejudice;

b) Awarding Marcus its costs, expenses, and attorneys' fees; and

c) Awarding Marcus any other and further relief that the Court deems just and appropriate.

## COUNTERCLAIMS

Marcus Theatres Corporation ("Marcus"), for its counterclaims against CHG-Meridian USA Corp. ("CHG"), alleges and states as follows:

## FACTUAL ALLEGATIONS

1. When the movie industry went digital over a decade ago, movie studios agreed to provide financing to theatre operators and partially fund the acquisition of expensive digital projection equipment.

2. This financing was accomplished through the payment of "Virtual Print Fees" ("VPFs") by the movie studios to theatre operators.

3. Specifically, when movie theatres exhibited certain eligible digital movies, they were paid VPFs by movie studios ("Distributors").

4. Here, the financing and funding arrangement for digital projection equipment was accomplished through a Master Lease Agreement and Master License Agreement, both facilitated by CHG.

5. Marcus is not a party to the Master Lease Agreement, under which CHG leased digital projection equipment to CDF2 Holdings, LLC.

6. In July 2011, Marcus and CDF2 entered into the Master License Agreement ("License Agreement"), pursuant to which Marcus licensed certain digital cinema projection equipment ("Equipment").

### *Marcus's Booking Commitment*

7. In exchange for a license to use the Equipment, Marcus agreed to a "Booking Commitment," which is defined in the License Agreement to include all of the following components:

    a. Marcus agrees to book "Eligible Digital Titles," as defined in the License, which generates payment of VPFs by Distributors to CDF2.

    b. Marcus agrees to pay "Relocation Expenses" directly to CDF2 in an amount set forth in the License.

    c. The sum of the VPFs paid by Distributors to CDF2 and the Relocation Expenses paid by Marcus to CDF2 equals or exceeds $9600 per screen per rolling four quarter period (the "Test Period").

8. Under the License Agreement, the Booking Commitment remained in effect until all debt, lease financing or other financing of the Equipment was paid off (the "Payoff Date").

### Distributor's Payment of Virtual Print Fees

9. CDF2 had its own contracts with movie studios pursuant to which the studios agreed to pay VPFs to CDF2. These contracts are referred to as "Distributor Agreements" in the License Agreement.

10. The Distributor Agreements provided for payment of "Standard Virtual Print Fees," in the amounts set forth in Exhibit O to the License Agreement.

11. CDF2 represented in the License Agreement that the terms of the Distributor Agreements would not provide for a discount to the Standard Virtual Print Fees until the Payoff Date.

12. The Payoff Date under the License was March 31, 2022.

13. On or around September 2020, CHG informed Marcus of "pandemic discounts" being applied to certain VPFs.

14. By discounting VPFs prior to the Payoff Date, CHG/CDF2 breached the License Agreement.

15. CHG/CDF2's breach damaged Marcus by reducing the sum of VPFs and Relocation Expenses paid to CDF2 per Test Period.

### Marcus's Right to Purchase the Equipment

16. At the end of the term of the License Agreement Marcus had the option to purchase the Equipment provided it gave CDF2 written notice of its intent to purchase and the parties agreed on a purchase price (the "Purchase Option").

17. If Marcus did not exercise the Purchase Option, CDF2 had a right to repossess the Equipment.

18. If CDF2 failed to remove the Equipment within 60 days after expiration or termination of the License Agreement, the License Agreement confirms the "Equipment will be deemed abandoned by CDF2."

19. Marcus provided CDF2 notice of its intent to purchase the Equipment.

20. Marcus and CHG exchanged several appraisal reports estimating the value of the Equipment.

21. On June 29, 2022, CHG provided Marcus with a notice of termination of the Master Lease Agreement between CHG and CDF2.

22. In the June 29, 2022 notice, CHG offered to sell the Equipment to Marcus for $7,645,778.

23. Following the June 2022 notice, and pursuant to its prior notice of intent to purchase the Equipment, Marcus countered CHG's offer and offered to purchase the Equipment for $1,906,490.

24. On August 25, 2022, counsel for CHG accepted Marcus's offer to purchase the Equipment for $1,906,490.

25. On September 14, 2022, counsel for CHG reiterated CHG's acceptance of Marcus's offer to purchase the Equipment for $1,906,490.

26. On September 23, 2022, counsel for Marcus confirmed Marcus and CHG's agreement that Marcus would purchase the Equipment for $1,906,490, and directed CHG to prepare the necessary paperwork to transfer ownership.

27. On or around October 2022, CHG breached its agreement with Marcus by refusing to sell the Equipment and demanding additional terms, including Marcus's payment of over $6 million in allegedly unpaid booking commitments.

## COUNT I
### (Breach of the License Agreement)

28. Marcus realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

29. The License Agreement is a valid and enforceable contract.

30. CHG elected to assume the obligations of CDF2 under the License Agreement.

31. Upon information and belief, CHG breached the License by agreeing to discounted VPFs prior to the Payoff Date.

32. CHG's breach damaged Marcus by, among other things, reducing the sum of VPFs and Relocation Expenses paid to CDF2 per Test Period.

33. As a result of CHG's breach, Marcus is entitled to damages in an amount to be determined at trial.

## COUNT II
### (Breach of the Purchase Agreement)

34. Marcus realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

35. Marcus's offer to purchase the Equipment for $1,906,490, and CHG's acceptance of that offer created a valid and enforceable contract (the "Purchase Agreement").

36. CHG breached the Purchase Agreement by refusing to sell the Equipment to Marcus absent additional payment of sums by Marcus.

37. All conditions precedent to the Purchase Agreement have occurred, been performed, or otherwise satisfied.

38. CHG's breach damaged Marcus in an amount to be determined at trial.

## COUNT III
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

39. Marcus realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

40. The Purchase Agreement between Marcus and CHG for the sale of the Equipment gave rise to an implied covenant of good faith and fair dealing that was binding on the parties.

41. CHG evaded the spirit of the bargain, rendered the transaction unfair, and breached the implied covenant of good faith and fair dealing by repudiating the agreement and refusing to sell the Equipment to Marcus.

42. CHG's breach of the implied covenant of good faith and fair dealing damaged Marcus in an amount to be determined at trial.

## COUNT IV
### (Declaratory Judgment – 28 U.S.C. § 2201)

43. Marcus realleges and incorporates by reference all prior paragraphs as if fully set forth herein.

44. Pursuant to 28 U.S.C. § 2201, Marcus seeks a declaration from the Court as to the validity of the Purchase Agreement with CHG, or in the alternative, a declaration that CHG abandoned the Equipment under the License by failing to remove it within 60 days after termination of the License.

45. All conditions precedent have occurred or been performed by Marcus, or otherwise satisfied.

46. A legal controversy exists between Marcus and CHG over the validity of the Purchase Agreement, or in the alternative, whether the Equipment has been abandoned.

47. This legal controversy is ripe for adjudication.

48. A determination as to whether or not the Purchase Agreement is enforceable, or whether or not the Equipment was abandoned, will terminate the controversy between the parties.

49. Under Wisconsin law and 28 U.S.C. § 2201, Marcus is entitled to a declaration that the Purchase Agreement is valid and enforceable, or in the alternative, that CHG abandoned the Equipment.

### **PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counterclaimant, Marcus Theatres Corporation, respectfully requests that this Court grant judgment against Plaintiff/Counter-Defendant, CHG-Meridian USA Corp., as follows:

(a) Awarding judgment for compensatory damages in an amount to be determined at trial, together with pre-judgment interest;

(b) Awarding Marcus's costs and attorneys' fees; and

(c) Awarding such other and further relief as the Court may deem just and equitable.

Dated this 17th day of April, 2024.

By: *s/John L. Kirtley*
John L. Kirtley
State Bar No. 1011577
Matthew M. Wuest
State Bar No. 1079834
Emma J. Jewell
State Bar No. 1104663
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Fax: 414-273-5198
Email: jkirtley@gklaw.com
ejewell@gklaw.com

*Attorneys for Marcus Theatres Corporation*